The Metropolitan Casualty Insurance Company of New York, Respondent, *v.* Rochester Fruit & Vegetable Company, Inc., Appellant.

Fourth Department, May 6, 1931.

*John F. Thomas*, for the appellant.

*Gilbert A. Nusbaum*, for the respondent.

TAYLOR, J. Defendant, an employer of labor, carried workmen's compensation insurance. Plaintiff was its insurer under a policy running from September 1, 1926, to September 1, 1927. Under the policy an advance premium of $300 was paid, which was increased to $700 in the early part of 1927. The policy provided that at the end of the period covered by it, the actual amount of remuneration earned by defendant's employees during the policy period should be determined and the earned premium adjusted in accordance with adjusted rates, to be arranged under conditions specified. The eventually applicable premium might thus turn out to be greater or less than the advance premium. The policy also provided that no condition or provision in it could be waived or altered except by written indorsement attached to it and signed by a named officer of the insurer. The policy also contained this paragraph: " This policy is issued by the Company and accepted by this Employer subject to the rate manual and rating plans established by the Compensation Inspection Rating Board and approved by the Superintendent of Insurance, with the agreement that the classification and rates of premium are subject to either correction or modification, or both, in accordance with such rate manual and such rating plans, such correction or modification, if any, to be expressed by endorsement naming the effective date thereof."

Attached to the policy was a document headed " Classification of Operations " which contained in detail the " basic rate " of premiums to be paid, a term which will be explained later. From these basic rates the " experience rate " or " applicable rate " was later to be ascertained in accordance with the Insurance Law, the insurance contract and the manual and plans of the State Compensation Inspection Rating Board. An action was brought upon this policy to recover premiums claimed to have been earned and unpaid. Various motions were made at the end of plaintiff's case and at the end of all the evidence; and finally, upon motion of plaintiff, the learned trial court made a statement to the jury in which he directed a verdict in favor of plaintiff in the sum of $2,141.37, the full amount demanded.

The matter of insurance rates, in relation to the controversy here involved, is taken cognizance of by the State in the Insurance Law. Sections 67, 141 and 141-b of that law have particular bearing upon the instant set of facts. Section 67 (as amd. by Laws of 1926, chap. 545) requires every insurance corporation or association doing business in the State and insuring employers under the Workmen's Compensation Law to file with the Superintendent of Insurance its manual of classifications and rules, basic rates for each class and merit rating plans for modifying class rates. These

papers are without effect until they have been approved by the Superintendent of Insurance. Section 141 (as amd. by Laws of 1923, chap. 436) is of broad scope. It provides that all " rating organizations " must file articles of agreement with the Superintendent of Insurance; that such organizations are subject to visitation and examination by the Superintendent and must file with him all rating manuals and schedules; that they must keep their records open on demand to those insured and must provide for hearings before the organizations, for people who are insured, in regard to change of rates; that all findings of the Superintendent of Insurance, to whom resort may also be made for rate changing, are subject to review by certiorari by the courts; that such organizations cannot make a rate not in accordance with their established rules, and that no agent, broker, corporation or association shall change a rate or receive a premium which deviates from rates fixed and rules applicable to the particular risk. Subdivision 4 of this section makes provision in detail against unfair discrimination as to rates. Section 141-b (added by Laws of 1922, chap. 660, as amd. by Laws of 1923, chap. 436) is of the same general purport as section 141. These rating organizations are not of state-wide scope; they are associations of two or more persons and (or) corporations operating in various localities in the State.

The " basic rate " contained in these policies is an average rate made up upon investigation of different industries and hazards. The rate finally made applicable to a given policy is made up by taking this basic rate and after a full investigation of the business conducted by the insured, an " experience rate " is arrived at, which is the payable or applicable rate.

On May 17, 1926, three and one-half months before the policy in suit was issued, a letter was written by the Superintendent of Insurance to the Manager of the Compensation Inspection Rating Board, in which the Superintendent approved of revised rules, classifications and rates to be applied to new and renewal business as of June 30, 1926. This letter is claimed to have covered the whole term of this policy; but it reached no further than the basic rates mentioned in the policy and was not an approval by the Superintendent of later applicable rates. In March, 1927, a certain " Deposit Premium Endorsement " (Exhibit 1-A) was mailed by plaintiff to defendant, the main object of which was to make the advance premium $700 instead of $300. The document was, however, an " indorsement " within the meaning of the policy, was made effective as of September 1, 1926, and was signed by two officers of the plaintiff. Sometime in 1927 Exhibit 2, which is a schedule of revised rates, experience or applicable rates, was sent

by plaintiff to defendant. Plaintiff presents testimony to the effect that it was sent with Exhibit 1-A in March, 1927, and was a part of that "indorsement." Defendant's testimony is to the effect that it was not received with Exhibit 1-A, but about August 1, 1927, and, therefore, that it was not a part of Exhibit 1-A and was not an "indorsement" because it did not "name the effective date" of the new rates and was not signed by any officer of the company. The learned trial court, in directing the verdict, told the jury that the court had no power to change or criticise the rates because there was a legislative scheme providing for them and the court was without jurisdiction in a collateral proceeding of this kind to attack the rates, and that defendant, had it so desired, had the opportunity to attack them under the statutes. The court further said that the controversy between the parties as to when the second schedule of rates (Exhibit 2) was served on defendant did not alter the legal situation, and that defendant, by retaining this schedule and not taking the matter before the Rating Board or the Superintendent of Insurance, waived any irregularity in the proceeding. In this view we do not concur. If defendant's contention be correct that no modified or corrected rates were ever called to its attention under its contract and the law, there was nothing as to which it migh, ask a rehearing or review.

The case of *Employers' Liability Assurance Corporation* v. *Hayes Construction Co.* (243 N. Y. 261) aids us in considering this appeal. Three of the judges dissented from the prevailing opinion, the non-concurrence being in regard to the question whether the "indorsement" notifying the insured as to the adjusted rates "named" a date upon which those rates would be effective. The dissenting members of the court apparently had the view that the particular year, month and day must be stated in the indorsement, while the majority of the court held that the effective date was named for the reason that the indorsement stated that the risk had been experience rated, and that *from date of issue of this policy* (a known "date") the following rates would apply. The court was evidently unanimous in the opinion that the effective date must be named in some manner in the "indorsement" which notifies the insured as to applicable rates.

In the present case Exhibit 2 itself contained no such specific "naming of the effective date." It cannot be said to have been an "indorsement" or have named a date at all, unless it was served with and as a part of Exhibit 1-A, the deposit premium indorsement, which was dated March 25, 1927, and specifically made effective September 1, 1926, the date of the policy. And whether or not

Exhibit 2 was thus served upon defendant was a jury question. The direction of a verdict was, therefore, erroneous.

There should be a new trial. To permit the witness Safferman to testify dogmatically that " the Superintendent of Insurance had approved " the manual of rates and the experience rating plan was error. The testimony related to a material matter, was conclusory and was not best evidence. The experience rating plan should be in evidence. There is other error and failure of proof as hereinbefore indicated.

The judgment appealed from should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.